NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 20-2629

———————

In re: 388 ROUTE 22 READINGTON HOLDINGS, LLC,

Debtor

SB BUILDING ASSOCIATES LIMITED PARTNERSHIP,

Appellant

———————

Appeal from United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3:20-cv-01252)
District Judge: Freda L. Wolfson

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 28, 2021

Before: AMBRO, KRAUSE, and BIBAS, Circuit Judges

(Opinion filed: October 15, 2021)

———————

OPINION[*]

———————

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

AMBRO, Circuit Judge

Appellant SB Building Associates Limited Partnership is the sole owner of 388 Route 22 Readington Holdings, LLC (the "Debtor"). SB is seeking to reverse an order by the United States Bankruptcy Court for the District of New Jersey authorizing the trustee for the Debtor, Bunce Atkinson (the "Trustee"), to sell the Debtor's property to Leon Kitovksy under 11 U.S.C. § 363. SB appealed the sale order to the District Court, but after the sale closed the Court dismissed the appeal as moot under § 363(m). SB now appeals that dismissal. As we agree that the property was sold for appropriate value, we affirm the District Court's order.

## I.

The Debtor has one significant asset: property located at 388 Route 22, Readington, New Jersey. In 2011, Iron Mountain Information Management, LLC, which held the mortgage on the property, obtained a foreclosure judgment. To avoid a sheriff's sale, the Debtor filed for Chapter 11 bankruptcy. Litigation ensued; eventually the Debtor and Iron Mountain agreed to a payment plan. This arrangement, however, was short-lived. The Debtor filed for bankruptcy a second time in 2018. The Bankruptcy Court converted the proceeding to a Chapter 7 liquidation and allowed Iron Mountain to foreclose on the Debtor's property.

Iron Mountain gave the Trustee until the end of September 2019 to sell that property. He hired a realtor, David Zimmel, to market it. Zimmel received one written, preliminary offer for $5,000,000, but the Trustee turned it down because, in addition to being unsigned and permitting cancellation for "any reason or for no particular reason,"

Supp. App. 81–82, the proposal requested a due diligence period that would have required the sale to take place after the end of the previously agreed foreclosure stay period. Plus, the offer contained two significant contingencies: (1) positive resolution of ongoing litigation to gain access to the public sewer system; and (2) receipt of an exemption from local zoning ordinances to allow a non-conforming use.

Instead, the Trustee and Iron Mountain arranged for an auction in December 2019. Twenty-two prospective buyers inspected the property, and fifteen made deposits to participate in bidding. Leon Kitovsky won with a bid of $3,200,000. The Bankruptcy Court approved the sale, which closed in March 2020. The sale price was sufficient to pay Iron Mountain and all claims against the Debtor's bankruptcy estate in full while still providing a distribution of over $100,000 to SB.

But SB maintains that the price was inadequate and moved to stay the sale. The Bankruptcy Court, the District Court, and our Court all denied the request. SB then appealed the sale order, and the District Court dismissed the appeal as moot per § 363(m). As noted, SB now appeals the dismissal.

## II.

Bankruptcy Code § 363(b) permits a trustee to sell the property of a bankruptcy estate. 11 U.S.C. § 363(b). Subsection (m) promotes the finality of such sales. It provides that

> [t]he reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the

3

> pendency of the appeal, unless such authorization and such
> sale or lease were stayed pending appeal.

Put simply, § 363(m) moots a challenge to a sale when "(1) the underlying sale or lease was not stayed pending the appeal, and (2) the court, if reversing or modifying the authorization to sell or lease, would be affecting the validity of such a sale or lease." *Schepis v. Burtch (In re Pursuit Cap. Mgmt., LLC)*, 874 F.3d 124, 135 (3d Cir. 2017).  To reach this two-part test, we must first ask whether the buyer "purchased . . . the property in good faith." *Id.* (quoting § 363(m)) (alterations omitted).  That requires a purchase for "appropriate value." *Id.* at 137.  The sole issue on appeal is whether Leon Kitovsky bought the property for appropriate (or fair) value.

SB challenges the Bankruptcy Court's decision on both legal and factual grounds. It argues the Bankruptcy Court misapplied the law by suggesting that a non-collusive auction is always sufficient to conclude value was paid.  SB also challenges the Court's factual findings and its decision not to hear additional testimony.  We consider each argument in turn.

SB faults the Bankruptcy Court for applying a *per se* rule that the results of a non-collusive auction conclusively establish fair value.  But this misstates its decision.  The Court found "that a properly advertised and actively participated in auction produces the best possible measure of fair value" and "[t]he lack of any irregularity in the auction process coupled with 15 qualified bidders is strong evidence that the $3.2 million sale price is fair value."  Supp. App. at 126, 129.  Its opinion correctly aligns with our holding in *Pursuit Capital* that, absent collusion, "a competitive auction strongly indicates that a

4

purchaser has paid appropriate value for estate assets." *In re Pursuit Cap. Mgmt.*, 784 F.3d at 137; *see also In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149 (3d Cir. 1986) (holding that while "an auction may be sufficient to establish that one has paid 'value' for the assets of a bankrupt," it does not establish value when there is collusive conduct).[1] Here there was no allegation of collusion, leading the District Court to conclude— properly—that the auction was strong evidence that the purchaser paid fair value for the property.

In addition, the Bankruptcy Court's factual findings were not clearly erroneous. It found the auction was well marketed and generated substantial interest from numerous potential bidders. Ultimately fifteen prospective buyers deposited money to participate in the auction, and the property was sold for approximately 40% more than its assessed value in 2014. And as the District Court explained, considerable additional evidence also supported the Bankruptcy Court's decision.

SB has not identified any persuasive reason that the Bankruptcy Court's conclusion was incorrect. In that Court, SB argued a $5,000,000 offer was a better indicator of value than the auction result. The Court, however, concluded it was "illusory." Supp. App. at 124. It explained that Iron Mountain was under no obligation to give the Trustee more time to close the sale (as that offer required) and the offer

---

[1] We need not decide if *Pursuit Capital* misrepresented the holding of *Abbotts Dairies* when it stated that "a public auction, as opposed to appraisals and other evidence, is the best possible determinant of the value of assets." 874 F.3d at 136 (alterations omitted). Regardless whether a public auction is always the "best possible" way to determine the value of assets, *Pursuit Capital* instructs that a competitive auction is highly probative and, if competitive, can be sufficient to determine an asset's fair value. *See id.* at 138.

5

"contain[ed] two substantial, perhaps insurmountable, contingencies" (resolution of the sewer-capacity litigation and obtaining a non-conforming use exemption). *Id.* Nor did the Court err in declining to hear additional testimony or order a new assessment because it already had sufficient evidence to determine that the purchase was for fair value. There is no clear indication that additional evidence was needed when it already had the sale price from a competitive auction. In particular, the Court found that the auctioneer accurately described the property's sewer access and concluded that the auction advertising was adequate. This was sufficient evidence to conclude that the property was sold for appropriate value.

\*     \*     \*     \*     \*

It has now been ten years since Iron Mountain obtained the foreclosure judgment. Over that decade SB used the bankruptcy process to delay repeatedly the sale of the Debtor's property. But proceedings eventually end. Section 363(m) serves to promote the finality of sales, and the District Court properly recognized that SB's challenge to the sale fails as moot. Accordingly, we affirm its order dismissing SB's appeal.

6